UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

Parisa Fasihianifard,

    *Petitioner*,

v.

DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and JAMES T. MADDEN, New York Field Director, CBP,

    *Respondents*.

Case No. _____

Date: January 29, 2017

**<u>PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

1

## INTRODUCTION

Petitioner Parisa Fasihianifard, a 24 year old female, student of Chemistry at Azad University, landed at John F. Kennedy International Airport ("JFK Airport") on the morning of January 28, 2017. Petitioner Parisa Fasihianifard was granted an F2 Visa as the wife of Mohamad Zandian, who holds an F1 Visa. After conducting standard procedures of administrative processing and security checks, the federal government has deemed the Petitioner not to pose threats to the United States.

Despite these findings and Petitioner's valid entry documents, U.S. Customs and Border Protection ("CBP") blocked Petitioner from exiting JFK Airport and detained Petitioner therein. No magistrate has determined that there is sufficient justification for the continued detention of Petitioner. Instead, CBP is holding Petitioner at JFK Airport solely pursuant to an executive order issued by President Donald Trump on January 27, 2017.

Because the executive order is unlawful as applied to Petitioner, her continued detention based solely on the executive order violates her Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is ultra vires under the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Further, Petitioners continued unlawful detention is part of a widespread policy, pattern, and practice applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, Petitioner respectfully applies to this Court for

a writ of habeas corpus to remedy her unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2. Venue properly lies within the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

3. No petition for habeas corpus has previously been filed in any court to review Petitioner's case.

## PARTIES

4. On knowledge and belief, Petitioner Parisa Fasihianifard, a 24 year old female, student of Chemistry at Azad University, is currently being held at JFK Airport in the Eastern District of New York, and is in possession of a valid F2 Visa.

5. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

6. U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

7. Respondent John Kelly is the Secretary of DHS. Secretary Kelly has immediate

custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

8. Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

9. Respondent James T. Madden is the Director of the New York Field Office of CBP, which has immediate custody of Petitioners and other members of the proposed class. He is sued in his official capacity.

10. Respondent Donald Trump is the President of the United States. He is sued in his official capacity.

## STATEMENT OF FACTS

**President Trump's January 27, 2017 Executive Order and *Darweesh, et ano v. Trump, et al***

11. On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

12. One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

13. Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole;

4

proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

14. Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

15. There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

16. On January 28, 2017, at or about 9:00 PM, the Court issued a temporary restraining order which is attached hereto as Exhibit B and is hereinafter referred to as the "Court Order" against the Defendants to this petition, enjoining them from enforcing that portion of the EO that apply to Petitioner. In particular, the Court explicitly enjoined and restrained Defendants from, "in any manner or by any means, removing individuals with refugee applications approved by U.S. Citizenship and Immigration Services as part of the U.S. Refugee Admissions Program, holders of valid immigrant and non-immigrant visas, and other individuals from Iraq, Syria, Iran,

Sudan, Libya, Somalia, and Yemen legally authorized to enter the United States." (*Darweesh, et ano v. Trump, et al.*, 1:17-cv-00480 AMD (EDNY, January 28, 2017).

**Petitioner Parisa Fasihianifard**

17. On knowledge and belief, Petitioner left Tehran, Iran on Friday, January 27, 2017 at approximately 6:00 P.M. Eastern Standard Time ("ET"). She departed on a flight from Tehran, Iran to Baku, Azerbaijan, and subsequently from Baku, Azerbaijan to New York City, JFK Airport on flight J2101.

18. On knowledge and belief, when she arrived at JFK Airport, Petitioner was told she would not be allowed to enter the United States and was being detained.

19. On knowledge and belief, Petitioner was told she would be deported from the United States, and would be required to return to Iran on the same airline on which she arrived. The next flight from the same airline was scheduled to depart on Monday, January 30, 2017, over 48 hours later.

20. On knowledge and belief, Petitioner, believing she had no choice other than to return to Iran based on information provided by the Defendants, purchased a ticket through Turkish Airlines to return to Iran at approximately 3:00 P.M. ET. The flight was scheduled to depart at approximately 11:40 P.M. ET.

21. On knowledge and belief, Petitioner was told by Turkish Airlines that based on the Court Order, deportation was being halted temporarily, and she was not placed on the Turkish Airlines flight.

22. Petitioner is not being permitted to meet with her attorneys who are present at

JFK and have made multiple attempts to meet with her.

23. On knowledge and belief, Petitioner has only been able to contact her husband through the airport telephones.

24. Upon knowledge and belief, Petitioner remains in the custody of CBP at JFK Airport, where they are continuing to conduct interviews and refusing to release her from custody, in violation of the Court Order which enjoins and restrains the Defendants from "in any manner or by any means removing individuals . . . [who are] holders of valid immigrant and non-immigrant visas, and other individuals from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen, legally authorized to enter the United States."

25. Upon knowledge and belief, Petitioner is not being permitted to apply for asylum or other forms of protection from removal.

26. Upon knowledge and belief, Petitioner is at imminent risk of being returned to Iran against her will, and despite the grave danger she faces there.

## CAUSES OF ACTION

### COUNT ONE
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### DENIAL OF RIGHT TO APPLY FOR ASYLUM

1. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

2. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment. Additionally, due process requires that arriving immigrants be afforded

those statutory rights granted by Congress and the principle that "[m]inimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

3. The United States government is obligated by United States and international law to hear the asylum claims of noncitizens presenting themselves at United States borders and ports of entry. The Immigration and Nationality Act provides that "[a]ny alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 235(b)." 8 U.S.C. § 1158(a)(1); *see also id.* § 1225(b)(1)(A)(ii).

4. Congress has given asylum seekers the right to present evidence to an Immigration Judge, 8 U.S.C. § 1229a(b)(4)(B), the right to move to reconsider any decision that the applicant is removable, 8 U.S.C. § 1229a(c)(5), and the right to judicial review by a court of appeals of final agency orders denying asylum on the merits and directing removal, 8 U.S.C. § 1252(a)(2)(B)(ii).

5. Consistent with these United States statutory and international law obligations, individuals arriving at United States ports of entry must be afforded an opportunity to apply for asylum or other forms of humanitarian protection and be promptly received and processed by United States authorities.

6. Having presented themselves at a United States port of entry, Petitioner is entitled to apply for asylum and to be received and processed by United States authorities.

7. Respondents' actions in denying Petitioners the opportunity to apply for asylum,

taken pursuant to the EO, violate the procedural due process rights guaranteed by the Fourteenth Amendment.

## COUNT TWO
## FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
## DENIAL OF RIGHT TO WITHHOLDING/CAT PROTECTION

8. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

9. Under United States law as well as human rights conventions, the United States may not return ("*refoul*") a noncitizen to a country where she may face torture or persecution. *See* 8 U.S.C. § 1231(b); United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title Parisa FasihianifardII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

10. Respondents' actions in seeking to return Petitioner to Iran, taken pursuant to the EO, deprive Petitioner of her rights under 8 U.S.C. § 1231(b) and the Convention Against Torture without due process of law.

## COUNT THREE
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

11. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

12. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment

Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT FOUR
### THE IMMIGRATION AND NATIONALITY ACT, THE CONVENTION AGAINST TORTURE, THE FOREIGN AFFAIRS REFORM AND RESTRUCTURING ACT OF 1998, IMPLEMENTING REGULATIONS [*ACCARDI* DOCTRINE]

13. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

14. The Immigration and Nationality Act and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title Parisa FasihianifardII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief. These provisions also entitle Petitioner to a grant of withholding of removal and CAT relief upon a showing that she meets the applicable legal standards. Respondents' actions in seeking to return Petitioner to Iran, taken pursuant to the EO, deprive Petitioner of her statutory and regulatory rights.

15. Respondents' actions in seeking to expel Petitioner, taken pursuant to the EO, deprives Petitioner of her statutory and regulatory rights in violation of *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Respondents' failure to follow the required regulations prejudicially deprived plaintiffs of fundamental due process and statutory rights, and this denial of process

was so egregious as to shock the conscience.

## COUNT FIVE
## FIFTH AMENDMENT – EQUAL PROTECTION

16. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

17. The EO discriminates against Petitioner on the basis of his/her country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

18. Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

19. Respondents have demonstrated an intent to discriminate against Petitioner on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

20. Applying a general law in a fashion that discriminate on the basis of religion in this way violates Petitioner's rights to equal protection the Fifth Amendment Due Process

Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioner satisfies the Supreme Court's test to determine whether a facially neutral law – in the case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the application of a law bear the burden of demonstrating a "prima facie case of discriminatory purpose."*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

21. Here, President Donald Trump and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See, e.g.*, Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration*, (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioner. *See supra*.

22. Thus, Respondents have applied the EO with forbidden animus and

discriminatory intent in violation of the equal protection of the Fifth Amendment and violated Petitioner's equal protection rights.

## COUNT SIX
## ADMINISTRATIVE PROCEDURE ACT

23. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

24. Respondents detained and mistreated Petitioner solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioner on the basis of her country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Five.

25. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

26. The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

27. The INA and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title Parisa FasihianifardII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief.

28. Respondents' actions in detaining and mistreating Petitioner were arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

## COUNT SEVEN
## RELIGIOUS FREEDOM RESTORATION ACT

29. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

30. The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioner's exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner prays that this Court grant the following relief:

(1) Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner;

(2) Issue an injunction ordering Respondents not to detain any individual solely on the basis of the EO;

(3) Enter a judgment declaring that Respondents' detention of Petitioner is and will be

unauthorized by statute and contrary to law;

(4) Award Petitioner reasonable costs and attorney's fees; and

(5) Grant any other and further relief that this Court may deem fit and proper.

DATED: January 29, 2017
Brooklyn, New York

                                        Respectfully submitted,

                                        *s/ Ross L. Weiner*

                                        Ross L. Weiner
                                        J. Keith Kobylka
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900
                                        ross.weiner@kirkland.com
                                        keith.kobylka@kirkland.com